**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE DIVISION**

**CIVIL ACTION NO. 07-211-JBC**

**KAREN M. JONES,**                                                                        **PLAINTIFF,**

**V.**                              **MEMORANDUM OPINION AND ORDER**

**MICHAEL ASTRUE,**
**SOCIAL SECURITY ADMINISTRATION,**                              **DEFENDANT.**

* * * * * * * * * *

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB") (DE 9, 11).  The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I.       Overview of the Process**

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir.

1994).  The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility.  *See id.*  Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

## II.    The ALJ's Determination

At the time of the alleged disability onset date, the plaintiff was a fifty-two-year-old female with a high school education.  She alleges disability beginning on April 15, 2004, due to a variety of mental and physical impairments.  The plaintiff filed her claim for DIB on May 24, 2005.  AR 15.  The claim was denied initially on

2

August 19, 2005, and again upon reconsideration on October 31, 2005. *Id.* After a hearing on February 5, 2007, Administrative Law Judge ("ALJ") Roger L. Reynolds determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. AR 15, 29.

At Step 1, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. AR 17. At Step 2, the ALJ found that the plaintiff had severe impairments of fibromyalgia, ulcerative colitis, status post ileostomy, migraines, polyarthralgias, hypertension, depression, anxiety with agoraphobia, obesity, and osteopenia in hip and spine. AR 17. The ALJ then determined that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments at Step 3. AR 18.

To assess the plaintiff's claim at Steps 4 and 5, the ALJ found that plaintiff had a residual functional capacity ("RFC") to perform a reduced range of medium and light work. AR 24-25. At Step 4, the ALJ found the plaintiff unable to perform her past relevant work as a social services homemaker. AR 27. Finally, at Step 5 the ALJ determined that due to the plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that the plaintiff can perform. AR 28. The ALJ denied the plaintiff's claim for DIB, and the plaintiff appealed to the Appeals Council. AR 3, 22. The Appeals Council denied her request for review on August 7, 2007, and she commenced this action. AR 8, DE 1.

3

III.    **Legal Analysis**

The plaintiff disagrees with the ALJ's finding that she is not disabled.  She

argues that the ALJ's decision was not supported by substantial evidence because

(1) the ALJ rejected the medical opinions of record regarding the plaintiff's mental

impairments and (2) the ALJ rejected the opinions of the plaintiff's treating

physician, Dr. Stumbo, and of a consultative examiner, Dr. Stidam, regarding the

plaintiff's physical impairments.  The court will consider these arguments in turn.


A.    **Substantial Evidence Supports ALJ's Determination of Plaintiff's Mental**
       **Impairments**

The plaintiff argues that substantial evidence in the record indicates that her

mental impairments are more limiting than the ALJ determined them to be.

Specifically, the plaintiff points to the evidence provided by the observations and

opinions of Dr. Bennett, two unnamed reviewing state agency physicians, Dr.

Lanthorn, and Dr. Spangler.

The ALJ determined that the plaintiff had severe mental impairments but

nevertheless could perform simple repetitive procedures without frequent changes

in work routines; could not perform work requiring detailed or complex problem

solving, independent planning, or the setting of goals; and should work primarily

with objects as opposed to persons with only occasional interaction with co-

workers, supervisors, or the general public.  AR 25.   The court must affirm the

4

ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Social Security*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  The court's review is deferential to the ALJ's decision.  The relevant question for this court, then, is not whether substantial evidence in the record indicates that the plaintiff's mental impairments were more limiting than as determined by the ALJ, but rather whether substantial evidence in the record supports the ALJ's determination.  The court finds that substantial evidence does support the ALJ's assessment of the plaintiff's mental limitations.

The opinions of two of the plaintiff's treating psychiatrists and of the two reviewing state agency physicians support the determination made by the ALJ. Furthermore, the opinions of Dr. Bennett and the state physicians were not inconsistent with the ALJ's evaluation.  The opinions rejected by the ALJ were inconsistent with the record as a whole.

One of the plaintiff's treating psychiatrists was Dr. Arthur Amador.  As noted by the ALJ, Dr. Amador diagnosed the plaintiff with a panic disorder without agoraphobia.  AR 164.  The record reflects that the plaintiff met with Dr. Amador at least twelve times, throughout the year 2005.  AR 164-66, 172, 181-86.  Dr. Amador noted that on September 30, 2005, the plaintiff had coherent, relevant speech, appropriate affect, adequate impulse control, and fair insight and judgment.

5

AR 164.  The plaintiff was also treated by Dr. Uzma Ehtesham, beginning in 2006. AR 427-29, 433-34, 463-64.  Dr. Ehtesham diagnosed the plaintiff as having a major depressive disorder and a generalized anxiety disorder.  Diagnosis alone does not connote impairment.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Nothing in these treating psychiatrists' reports suggests that the plaintiff's mental impairments are more limiting than the ALJ determined.  Furthermore, the record indicates that the plaintiff's mental impairments could be managed with medication. AR 86, 148, 463.

Citing *Shelman v. Heckler*, 821 F.2d 321 (6th Cir. 1987), the plaintiff argues that the ALJ was required to discuss limitations noted by Dr. Bennett and the state agency physicians and explain his rejection of their findings.  To support this argument, the plaintiff cites.  *Shelman*, however, addressed the necessity of the ALJ's considering the opinions of a plaintiff's treating physician.  Neither Dr. Bennett nor the state agency physicians are the plaintiff's treating physicians.

Furthermore, it is not clear to the court that the ALJ rejected these doctors' opinions.  On the contrary, their opinions support the ALJ's determination. Although the ALJ does not specifically reference the findings of the two state doctors who examined the plaintiff on August 16, 2005, and October 19, 2005, his assessment is consistent with their findings.[1]  In addition, the plaintiff self-

---

[1]  State reviewing psychologist Jane Brake, Ph.D., concluded that the plaintiff was "[a]ble to relate to others when she goes out for [appointments] and church" and found that despite mental limitations, the plaintiff was able to "[u]nderstand and recall simple material;" "[c]oncentrate and persist at simple tasks in two hour

reported to the state physician that her medication for her mental impairments was "mostly effective." AR 148. Another reviewing state agency physician on October 19, 2005, made similar findings and adopted the conclusions of the previous report. AR 199.

Similarly, Dr. Bennett's report largely supports the ALJ's determination. Although Dr. Bennett noted that the plaintiff's thoughts were "disorganized and scattered," the doctor attributed this problem to the plaintiff's difficulty focusing attention and stated that there were "no indications of delusional thinking or paranoid ideation. There were no symptoms of a formal thought disorder." AR 142. Most notably, the ALJ's conclusions as to the defendant's mental functional capacities are largely consistent with Dr. Bennett's conclusions.[2]

The opinions of Drs. Lanthorn and Spangler were contradicted by the record as a whole and, because both are consulting examiners, their opinions are not entitled to special deference. Dr. Lanthorn's diagnosis of a psychotic disorder is

---

segments;" "[f]unction in an object focused setting that requires little public contact;" and "[a]dapt to routine changes." AR 148. The ALJ's conclusions as to the plaintiff's mental functional capacity were similar to these findings.

[2]Dr. Bennett concluded that the plaintiff's capacity to understand instructions to perform simple, repetitive tasks was not affected by her impairments; that the plaintiff had only moderate limitations to her capacity to perform simple, repetitive tasks; that the plaintiff had only slight limitations in her capacity to interact appropriately with fellow workers and supervisors; and that she had the ability to manage any awarded benefits. AR 143. As the plaintiff points out, Dr. Bennett also noted that the plaintiff had marked limitations in her ability to tolerate the stress and pressure of day-to-day employment. *Id.* To the extent the ALJ rejected this conclusion, his decision is supported by other evidence in the record as discussed above and is a conclusion within his power to make.

inconsistent with the record as a whole.  While Dr. Lanthorn noted that on August 1, 2005, the plaintiff had visual hallucinations (AR 360), her treating psychiatrist Dr. Amador noted on September 30, 2005, that the plaintiff denied having any visual hallucinations (AR 164).  The plaintiff had far more extensive patient-doctor relationships with Drs. Amador and Ehtesham, neither of whom ever diagnosed a psychotic disorder.  Dr. Lanthorn's opinions as to the plaintiff's mental functional capacities are contradicted by the opinions of other doctors.

Dr. Spangler's report similarly is contradicted by the record as a whole.  The ALJ was free to resolve the conflicts between Dr. Lanthorn's and Dr. Spangler's findings and the opinions of other doctors.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (finding that the duty of resolving any such conflicts rests with the ALJ).[3]  An opinion that the plaintiff is disabled is not a medical opinion; instead, it is an issue reserved to the commissioner because it is a finding that is dispositive of a case.  20 C.F.R. §404.1527(e), §416.927(e).  The evidence discussed by the ALJ provides substantial evidence to support any rejection, either explicitly or implicitly, of the opinions of Drs. Bennett, Lanthorn, and Spangler.  *See Smith v.*

---

[3]As part of her argument that the ALJ improperly disregarded Dr. Lanthorn's assessment, the plaintiff points to the ALJ's statement that the plaintiff was a college graduate, when the record clearly shows that she has only a high-school education.  AR 22.  This error is minor and not material to the ALJ's decision.  The ALJ did not place much weight on this mistaken fact and the court will not remand in order to correct a minor error in the opinion.  *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

*Comm'r of Social Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007) (ALJ committed no error in not specifically addressing each non-treating source's opinions).

**B.      Substantial Evidence Supports ALJ's Determination of Plaintiff's Physical Impairments**

The plaintiff argues that the ALJ erred in rejecting the opinions of Dr. Stumbo, one of the plaintiff's treating physicians, and in rejecting the opinions of a consultative examiner, Dr. Stidam.

An ALJ may reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings, but he must give good reasons for the weight assigned to the treating source's opinions.  20 C.F.R. § 404.1527(d)(2); *Wilson*, 378 F.3d at 544.  In rejecting Dr. Stumbo's opinion of the plaintiff's physical functional capacity, the ALJ noted that Dr. Stumbo's diagnosis was "sparsely documented" and went on to give several examples of parts of the record that contradicted Dr. Stumbo's findings.  AR 18-20.  Such sparse documentation and contradictory opinions of other treating doctors are sufficient reasons to give less weight to Dr. Stumbo's opinion.  The court finds substantial evidence exists to support the ALJ's assessment of the plaintiff's physical impairments.

First, other evidence on the record supports the ALJ's determination that the plaintiff's limitations were not as disabling as indicated by Dr. Stumbo.  For example, one doctor, Dr. Patel, determined, based on a CT scan taken on June 28, 2006, that the plaintiff had twenty-percent compression of the vertebrae at T10.

9

AR 462.  According to the CT scan report, the plaintiff had some "degenerative changes" but no other abnormalities.  AR 411.  This report and Dr. Patel's interpretation of it directly contradict Dr. Stumbo's report of July 7, 2006, which shows that upon a DEXA scan, the plaintiff showed evidence of compression fractures of T6-T7 and T10-T11 vertebrae and fifty-percent compression.  AR 406.  Furthermore, although on February 26, 2007, Dr. Stumbo continued to diagnose the plaintiff as having osteoporosis (AR 449), the medical evidence in the record indicates that she had osteopenia, a less severe version of osteoporosis.  As late as July of 2006, a DEXA scan revealed osteopenia, but "[n]o evidence of osteoporosis."  AR 406.

Second, while Dr. Stumbo was a treating physician, he was not the plaintiff's only treating physician.  The opinions of other doctors (Breeding, Khater, Domingo, Lingreen, and Spady) do not indicate plaintiff is as limited as Stumbo concludes.  AR 167-71, 214-75, 336-55, 378-426.  In choosing not to be bound by Dr. Stumbo's opinion, the ALJ relied in part on these opinions of the plaintiff's other treating physicians.  The ALJ also noted that pain is subjective and determined that the plaintiff's reports of pain were not credible.[4]  AR 26.  He also found significant prior reports by a treating neurological surgeon that the plaintiff's pain was under control.  AR 18.  Indeed, the record indicates that the plaintiff's pain was manageable.  AR 239, 279.  The ALJ also considered, and the record

---

[4] The plaintiff does not challenge the ALJ's assessment of her credibility, and so the court will not address it specifically.

shows, that the plaintiff underwent a vertebroplasty to relieve back pain on March 1, 2007, and that the procedure went without incident.  AR 19, 459.

The plaintiff argues that the ALJ improperly disregarded the limitations listed by Dr. Stidam and did not explain his rejection of Dr. Stidam's findings.  The plaintiff argues that "of the numerous limitations noted by Dr. Stidam, the ALJ only mentioned the limitations of not lifting over 20 pounds and having to change her ileostomy bag."  DE 9, p.15-16.

The opinion of a consulting physician is not entitled to the deference due the opinion of a treating physician.  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  Furthermore, none of the "numerous limitations noted by Dr. Stidam" are in contradiction with the assessment made by the ALJ.  In fact, the ALJ apparently expressly incorporated Dr. Stidam's findings that the plaintiff could only occasionally climb ladders, balance, stoop, kneel, crouch, or crawl.  AR 444.  *Cf.* AR 25.  Dr. Stidam's assessment of the plaintiff's ability to do work activities includes his opinion that she can occasionally carry twenty-one to fifty pounds (AR 441) – just as the ALJ eventually determined (AR 17).  To the extent the ALJ disregarded Dr. Stidam's opinion that the requirements of the plaintiff's ileostomy would disrupt her daily activities, the ALJ explained his reasoning: the extent of the inconvenience was based only on the plaintiff's self-reporting to Dr. Stidam; the plaintiff has lived with the ileostomy bag since she was 26 years old; and she worked through 2004.  AR 27.  *See Blacha v. Sec'y of Health and Human Servs.*,

927 F.2d 228, 231 (6th Cir. 1990) (finding significant that the plaintiff continued to work after the accident and finding no objective evidence to support argument that his condition declined significantly).

## IV. Conclusion

In summary, substantial evidence supports the ALJ's conclusion that the plaintiff could perform other work and was not disabled under the meaning of the Social Security Act.

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 9) is **DENIED**.

Signed on  January 5, 2009



JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY